**\*\* § 362 INFORMATION COVER SHEET \*\*†**

Ralph Steven Lewis
**Debtor**                          Case No: 15-15696-mkn              **Motion #:**

Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust A   **Chapter:** 13
**MOVANT**

| |
|---|
| **Certification of Attempt to Resolve the Matter without Court Action:** |
| Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so. |
| Date: 07.19.2018      Signature: /s/Jason C. Kolbe |
| Attorney for Movant |

PROPERTY INVOLVED IN THIS MOTION: 2470 Citrus Garden Circle , Henderson, NV 89052-2398

NOTICE SERVED ON:        Debtor(s) ☒;        Debtor(s) Counsel ☒;        Trustee ☒

DATE OF SERVICE: 07.19.2018

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS:\* | The EXTENT and PRIORITY of LIENS: |
| Movant: $417,750.84 | 1st _____ |
| Total Encumbrances:  $417,750.84 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: | 3rd _____ |
| As is the case with vast majority of properties in Nevada, Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. | 4th _____ |
| | Other: _____ |
| | Total Encumbrances: $_____ |
| | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR:\* | DEBTOR'S OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $294,880.00 | |
| Interest Rate: 6.375% | |
| Duration: 30 Year | |
| Payment Per Month: $ 2,043.13 | |
| Date of Default: 11.01.15 | |
| Amount of Postpetition Arrearages: $66,617.34 | |
| Date of Notice of Trustee Sale:  N/A | |
| SPECIAL CIRCUMSTANCES: **The undersigned hereby certifies that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than three (3) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** | |
| | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Jason C. Kolbe | SUBMITTED BY: _____ |
| SIGNATURE: /s/Jason C. Kolbe | SIGNATURE: _____ |

\* All amounts due to Movant as of June 16, 2018

**TIFFANY & BOSCO, P.A**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com

**Attorney for Secured Creditor**
Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust A
16-74483

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK Case No.: 15-15696-mkn |
| Ralph Steven Lewis, | Date:  August 22, 2018 <br> Time:  1:30 p.m. |
| Debtor. | Chapter 13 |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

       Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust A, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor(s) having an address of 2470 Citrus Garden Circle, Henderson, NV 89052-2398 (the "Property").  In further support of this Motion, Movant respectfully states:

       1.      On or about October 2, 2015, the above named Debtor filed this instant Chapter 13 Petition in Bankruptcy with the Court.

       2.      Secured Creditor is the current payee of a promissory note dated  in the principal sum of $294,880.00 ("Promissory Note" herein). A copy of the Note is attached hereto as Exhibit "A".

       3.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor(s) under the Note and the Deed of Trust with respect to the Loan are secured by the Property.  A copy of the Deed of Trust is attached hereto as Exhibit "B".

4.     All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of deed of trust, which is attached hereto as Exhibit "C".

5.     Secured Creditor is informed and believes, and based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

6.     As of June 16, 2018, the status of payment towards the Secured Creditor's note was as follows:

     a.    The current amount due and owing is as follows:

| | |
|---|---|
| 14 Monthly Payments(s) at $2,133.12 (November 1, 2015 - December 1, 2016) | $29,863.68 |
| 12 Monthly Payments(s) at $2,041.24 (January 1, 2017 - December 1, 2017) | $24,494.88 |
| 6 Monthly Payments(s) at $2,043.13 (January 1, 2018 - June 1, 2018) | $12,258.78 |
| Total | $66,617.34 |

through June 16, 2018, with another payment coming due on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due. Secured Creditor will provide an update of the above information for the Court and interested parties if there is an opposition filed or upon written request to undersigned counsel.

7.     Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property.   As is the case with vast majority of properties in Nevada, Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property.  Therefore, secured creditor is not adequately protected.

8.     Secured Creditor did not initiate foreclosure proceedings on this Property.

9.      Secured Creditor urges that this Court issue an order permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

10.      Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as the "coversheet" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

11.      Rick A. Yarnall has been appointed by this Court as the Chapter 13 Trustee in this instant Bankruptcy proceeding.  To the extent the relief sought herein is granted, the Trustee should be bound by any such judgment.

12.      This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

WHEREFORE, Secured Creditor prays judgment as follows:

(1)      For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

(3)      For attorneys' fees and costs of suit incurred herein.

(4)      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

(5)      For such other and further relief as this Court deems appropriate.

DATED this 3; th day of June, 2018.          **TIFFANY & BOSCO, P.A**

By: _/s/Jason C. Kolbe_
**JASON C. KOLBE, ESQ.**
Attorney for Secured Creditor
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135

**TIFFANY & BOSCO, P.A**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com

**Attorney for Secured Creditor**
Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust A
16-74483

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Bk Case No.: 15-15696-mkn |
| Ralph Steven Lewis, | Date: August 22, 2018 |
| | Time: 1:30 p.m. |
| Debtor. | Chapter 13 |

### [PROPOSED] ORDER TERMINATING AUTOMATIC STAY

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay in the

above-entitled bankruptcy proceedings is terminated as to the Debtor and the Trustee in favor of

Secured Creditor Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust

A, its assignees and/or successors in interest, of the subject property, generally described as 2470 Citrus

Garden Circle, Henderson, NV 89052-2398, and legally described as follows:

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

PARCEL ONE (1):

Lot 39 in Block 2 of GREEN VALLEY RANCH - PARCEL 51, as shown by map thereof on file in Book 82 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):

A non-exclusive easement for access, ingress and egress over the Private Streets and Common Elements as shown upon the above referenced map, as provided for in and subject to that certain Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Green Valley Ranch Parcel 51, recorded February 10, 1998 in Book 980210 as Document No. 01613 of Official Records.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that this Order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

**Submitted by:**

**TIFFANY & BOSCO, P.A**

By: /s/Jason C. Kolbe
**Jason C. Kolbe, Esq.**, Attorney for Secured Creditor

**APPROVED / DISAPPROVED**

By:
**Ralph Steven Lewis**, Pro se Debtor

**APPROVED / DISAPPROVED**

By:
Rick A. Yarnall, Chapter 13 Trustee

**TIFFANY & BOSCO, P.A**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com

**Attorney for Secured Creditor**
Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust A
16-74483

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>Ralph Steven Lewis,<br><br>Debtor. | BK Case No.: 15-15696-mkn<br><br>Date:  August 22, 2018<br>Time:   1:30 p.m.<br><br>Chapter 13 |

### <u>CERTIFICATE OF SERVICE OF NOTICE AND<br>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

1.  On July 19, 2018, I served the following documents:

### NOTICE, MOTION FOR RELIEF FROM AUTOMATIC STAY

2.  I caused to be served the above-named documents by the following means to the persons as

listed below:

X   **a. ECF System**

Rick A. Yarnall
ecfmail@LasVegas13.com
Chapter 13 Trustee

X  **b. United States mail, postage fully prepaid:**

       Ralph Steven Lewis
       2470 Citrus Garden Circle
       Henderson, NV  89052
       Debtor

     **I declare under penalty of perjury the foregoing is true and correct.**

DATED this 19th day of July, 2018.

By:    /s/Brad Anderson

# Exhibit A

Exhibit A

Multistate

# NOTE

NOVEMBER 21, 2007
[Date]
2470 CITRUS GARDEN CIRCLE, HENDERSON, NV  89052-2399
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BANK OF AMERICA N.A.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED NINETY FOUR THOUSAND EIGHT HUNDRED EIGHTY AND 00/100

Dollars (U.S. $     294,880.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  SIX AND THREE-EIGHTHS percent (      6.375      %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on JANUARY 01      ,   2008   . Any principal and interest remaining on the first day of   DECEMBER         , 2037       , will be due on that date, which is called the "Maturity Date."
### (B) Place
Payment shall be made at BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404                                          or at such place as Lender may designate in writing by notice to Borrower.
### (C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $      1,839.67          .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
### (D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

**FHA Multistate Fixed Rate Note - 10/9**
—BS1R (9609)
ELECTRONIC LASER FORMS, INC. - (800)327-0545
Page 1 of 3

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of        FOUR        percent (     4.0     %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)    _____ (Seal)
RALPH E LEWIS                   -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                                -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                                -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                                -Borrower                              -Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
Bank of America, N.A.
BY
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT

**Exhibit B**

EXHIBIT B

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**20071126-0001777**

Assessor's Parcel Number: ████████

Fee: $24.00
N/C Fee:  $25.00

11/26/2007              13:53:56
T20070205213

~~Return To:~~    FL9-700-01-01, JACKSONVILLE POST
BANK OF AMERICA
9000 SOUTHSIDE BLVD., BLDG 700,
JACKSONVILLE, FL  32256

**Requestor:**
    LAWYERS TITLE OF NEVADA

Prepared By:     KRYSTAL SMITH
BANK OF AMERICA N.A.
9000 SOUTHSIDE BLVD - BLDG 600
JACKSONVILLE, FL 322560000
~~Recording Requested By:~~ FL9-700-01-01, JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD., BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

*Return To*

**Debbie Conway**              KGP
**Clark County Recorder**      Pgs: 11

████████

State of Nevada

[Space Above This Line For Recording Data]

# DEED OF TRUST

FHA Case No.
████████

THIS DEED OF TRUST ("Security Instrument") is made on          NOVEMBER 21, 2007 .
The Grantor is   RALPH S LEWIS, AN UNMARRIED MAN

("Borrower"). The trustee is  PRLAP, INC.

("Trustee"). The beneficiary is  BANK OF AMERICA N.A.

which is organized and existing under the laws of    UNITED STATES OF AMERICA                        ,
and whose address is  9000 SOUTHSIDE BLVD - BLDG 600, JACKSONVILLE, FL  322560000
                              ("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED NINETY FOUR THOUSAND EIGHT HUNDRED EIGHTY AND 00/100
                              Dollars (U.S. $       294,880.00).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
DECEMBER 01, 2037                              . This Security Instrument secures

**FHA Nevada Deed of Trust - 4/96**
⓪-4R(NV) (0507)
VMP Mortgage Solutions, Inc. (800)5█-███
Page 1 of 8                Initials: ███



to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in     CLARK

County, Nevada:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

which has the address of   2470 CITRUS GARDEN CIRCLE                                              [Street]
                           HENDERSON                    [City], Nevada   89052-2395 Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements

-4R(NV) (0507)                        Page 2 of 8                        Initials

before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower

-4R(NV) (0507)                    Page 3 of 8                    Initials:

shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

   **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

   **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

   **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

   **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower

designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 500.00 .

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Growing Equity Rider  ☐ Other [specify]
☒ Planned Unit Development Rider  ☐ *Graduated Payment Rider*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            RALPH S LEWIS                    -Borrower

_____          _____ (Seal)
                                                                             -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                          -Borrower


STATE OF NEVADA
COUNTY OF Clark

This instrument was acknowledged before me on Nov. 21, 2007                  by

Ralph S. Lewis

```
NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JEANNIE THOMAS
Appt. No. 02-77741-1
My Appt. Expires Sept. 16, 2010
```
Jeannie Thomas

Mail Tax Statements To:

    RALPH S LEWIS
    2470 CITRUS GARDEN CIRCLE
    HENDERSON, NV 89052-2399


-4R(NV) (0507)              **Page 8 of 8**

File No.: ████████

## EXHIBIT "A"

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

PARCEL ONE (1):

Lot 39 in Block 2 of GREEN VALLEY RANCH  - PARCEL 51, as shown by map thereof on file in Book 82 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):

A non-exclusive easement for access, ingress and egress over the Private Streets and Common Elements as shown upon the above referenced map, as provided for in and subject to that certain Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Green Valley Ranch Parcel 51, recorded February 10, 1998 in Book 980210 as Document No. 01613 of Official Records.

APN: ████████████

# PLANNED UNIT DEVELOPMENT RIDER

LOAN # █████████

FHA Case No.
████████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        21ST        day of
NOVEMBER, 2007                    , and is incorporated into and shall be deemed to
amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security
Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note ("Note") to BANK OF AMERICA N.A.

("Lender") of the same date and covering the Property described in the Security
Instrument and located at: 2470 CITRUS GARDEN CIRCLE, HENDERSON, NV 89052-2399

(Property Address)
The Property Address is a part of a planned unit development ("PUD") known as

GREEN VALLEY RANCH
(Name of Planned Unit Development)

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
   A. So long as the Owners Association (or equivalent entity holding title to
      common areas and facilities), acting as trustee for the homeowners, maintains,
      with a generally accepted insurance carrier, a "master" or "blanket" policy
      insuring the Property located in the PUD, including all improvements now
      existing or hereafter erected on the mortgaged premises, and such policy is
      satisfactory to Lender and provides insurance coverage in the amounts, for
      the periods, and against the hazards Lender requires, including fire and other
      hazards included within the term "extended coverage," and loss by flood, to
      the extent required by the Secretary, then: (i) Lender waives the provision in
      Paragraph 2 of this Security Instrument for the monthly payment to Lender of
      one-twelfth of the yearly premium installments for hazard insurance on the
      Property, and (ii) Borrower's obligation under Paragraph 4 of this Security
      Instrument to maintain hazard insurance coverage on the Property is deemed
      satisfied to the extent that the required coverage is provided by the Owners
      Association policy. Borrower shall give Lender prompt notice of any lapse in
      required hazard insurance coverage and of any loss occurring from a hazard.
      In the event of a distribution of hazard insurance proceeds in lieu of
      restoration or repair following a loss to the Property or to common areas and
      facilities of the PUD, any proceeds payable to Borrower are hereby assigned

**FHA Multistate PUD Rider - 10/95**
Ⓜ-589U (0402)
Page 1 of 2      Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
RALPH A LEWIS                      −Borrower                                       −Borrower

_____ (Seal)          _____ (Seal)
                                   −Borrower                                       −Borrower

_____ (Seal)          _____ (Seal)
                                   −Borrower                                       −Borrower

_____ (Seal)          _____ (Seal)
                                   −Borrower                                       −Borrower

# Exhibit C

EXHIBIT C

Inst #: 20180330-0001072
Fees: $40.00
03/30/2018 09:42:57 AM
Receipt #: 3360747
Requestor:
PREMIER AMERICAN TITLE
Recorded By: RYUD   Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

RECORDING REQUESTED BY:

Tiffany & Bosco, PA
2525 E Camelback Road, Suite 700
Phoenix, AZ 85016

When Recorded Mail To:
CARRINGTON MORTGAGE
SERVICES, LLC, ATTN:
MARGARITA DEUNING
1600 SOUTH DOUGLASS ROAD,
SUITE 200-A
ANAHEIM, CA 92806

T&B NO.: ▮▮▮▮▮▮▮
MIN NO.: ▮▮▮▮▮▮▮
MERS Phone: 1-888-679-6377
APN: ▮▮▮▮▮▮▮
Property Address: 2470 Citrus Garden Circle, Henderson, NV 89052-2398

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

*This Corrective Assignment is being recorded to amend that Assignment recorded on 10/18/2017 as Instrument 20171018-0001364, as that Assignment incorrectly identifies the borrower as AN UNMARRIED WOMAN.*

For Value Received, **SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY CARRINGTON MORTGAGE SERVICES, LLC, ITS ATTORNEY IN FACT**, the undersigned holder of a Deed of Trust (Herein "Assignor"), whose address is **451 7th STREET, S.W., WASHINGTON, DC 20410**, does hereby grant, sell, assign, transfer and covey, unto **WILMINGTON SAVINGS FUND SOCIETY , FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST A** (herein "Assignee"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200-A, ANAHEIM, CA 92806**, all beneficial interest under a certain Deed of Trust made and executed by **RALPH S. LEWIS, AN UNMARRIED MAN** ("Borrower"), upon the following property located at **2470 CITRUS GARDEN CIRCLE, HENDERSON, NEVADA 89052** and situated in **CLARK COUNTY**, State of Nevada.

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

Such Deed of Trust having been given to secure payment of **$294,880.00**, to and in favor of original lender **BANK OF AMERICA, N.A.**, which Deed of Trust is dated **NOVEMEBER 21, 2007** and recorded on **NOVEMEBER 26, 2007** in **INSTRUMENT NO. 20071126-0001777** of the official Records of Clark County, State of **NEVADA**, together with all rights accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

A notary public or other officer completing this Certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY CARRINGTON MORTGAGE SERVICES, LLC. ITS ATTORNEY IN FACT:**

By : _____

Chris Lechtanski, AVP of Default

Its: _____

for Carrington Mortgage Services, LLC Attorney in Fact

STATE OF _____California_____

COUNTY OF _____Orange_____

On ___March 26___, 20_18_, before me, _____Wheny Wulandari_____, a Notary Public for said State, personally appeared _____Chris Lechtanski_____ personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

WHENY WULANDARI
Notary Public – California
Orange County
Commission # 2214915
My Comm. Expires Oct 17, 2021

Legal Description


All that certain real property situated in the County of Clark, State of Nevada, described as follows:


PARCEL ONE (1):

Lot 39 in Block 2 of GREEN VALLEY RANCH - PARCEL 51, as shown by map thereof on file in Book 82 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada.


PARCEL TWO (2)

A non-exclusive easement for access, ingress and egress over the Private Streets and Common Elements as shown upon the above referenced map, as provided for in and subject to that certain Declaration of Covenants, Conditions and Restrictions and Reservation of Easement of Green Valley Ranch Parcel 51, recorded February 10, 1998 in Book 980210 as Document No. 01613 of Official Records.

# Clarification Page

The illegible portion of the document reads as follows:

Chris Lochtanski
For Carrington Mortgage Services, LLC Attorney in Fact

Inst #: 20171018-0001363
Fees: $40.00
10/18/2017 01:54:26 PM
Receipt #: 3225130
Requestor:
PREMIER AMERICAN TITLE
Recorded By: DROY Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

This Document Prepared By:
**ARIANA GARCIA**
**BANK OF AMERICA**
**MC: FL1-908-01-05**
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**
**(800) 444-4302**

When Recorded Mail To:
**CARRINGTON MORTGAGE**
**SERVICES, LLC, ATTN:**
**MARGARITA DEUNING**
**1600 SOUTH DOUGLASS ROAD,**
**SUITE 200-A**
**ANAHEIM,, CA 92806**

_____ [Space Above This Line for Recording Data] _____

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **BANK OF AMERICA, N.A.**, the undersigned holder of a Deed of Trust (herein "Assignor"), whose address is **4909 SAVARESE CIRCLE , TAMPA, FL 33634**, does hereby grant, sell, assign, transfer and convey, unto **SECRETARY OF HOUSING AND URBAN DEVELOPMENT** (herein "Assignee"), whose address is **451 7TH STREET, S.W, WASHINGTON,, DC 20410**, all beneficial interest under a certain Deed of Trust made and executed by **RALPH S LEWIS, AN UNMARRIED MAN** ("Borrower"), upon the following property located at **2470 CITRUS GARDEN CIRCLE, HENDERSON, NEVADA 89052** and situated in **CLARK COUNTY,** State of **NEVADA.**

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

Such Deed of Trust having been given to secure payment of **$294,800.00**, to and in favor of original lender **BANK OF AMERICA, N.A.**, which Deed of Trust is dated **NOVEMBER 21, 2007** and recorded on **NOVEMBER 26, 2007** in **INSTRUMENT NO. 20071126-0001777 of the official Records of CLARK COUNTY** , State of NEVADA, together with all rights accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

AUG 1 8 2016
_____
Date

<u>**BANK OF AMERICA, N.A.**</u>

By: _____
(Signature)
**ARIANA GARCIA**
**ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _____ AUG 1 8 2016 _____

by **ARIANA GARCIA, ASSISTANT VICE PRESIDENT** , of **BANK OF AMERICA, N.A.,** a company,

on behalf of the company. He/She is personally known to me or who has produced

_N/A_____ as identification.

_____
MARTHA LUCIA CORREA, Notary Public
My commission expires: **JAN 2 6 2019**

**MARTHA LUCIA CORREA**
Notary Public, State of Florida
Commission# FF 192844
My comm. expires Jan. 26, 2019

Page 2

**EXHIBIT "A"**

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

PARCEL ONE (1):

Lot 39 in Block 2 of GREEN VALLEY RANCH - PARCEL 51, as shown by map thereof on file in Book 82 of Plats, Page 70, in the Office of the County Recorder of Clark County, Nevada.

PARCEL TWO (2):

A non-exclusive easement for access, ingress and egress over the Private Streets and Common Elements as shown upon the above referenced map, as provided for in and subject to that certain Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Green Valley Ranch Parcel 51, recorded February 10, 1998 in Book 980210 as Document No. 01613 of Official Records.